UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | | |
|---|---|---|
| ROBERT LORSCH, | ) | |
| Plaintiff, | ) | Case No. CV 14-2202 AJW |
| | ) | |
| v. | ) | MEMORANDUM OF DECISION |
| | ) | REGARDING DEFENDANTS' MOTION |
| UNITED STATES OF AMERICA, | ) | TO DISMISS OR ALTERNATIVELY |
| et al., | ) | FOR SUMMARY JUDGMENT |
| Defendants. | ) | |
| | ) | |
| _____ | ) | |

**Proceedings**

Plaintiff filed a complaint against defendants United States of America and the United States Department of Agriculture ("USDA") pursuant to the Federal Tort Claims Act, 28 U.S.C. §§ 1346(b), 2671-2680 ("FTCA"). The complaint alleges claims for negligence, abuse of process, malicious prosecution, intentional infliction of emotional distress ("IIED"), and negligent infliction of emotional distress ("NIED"). [Docket No. 1].

Defendants filed a motion to dismiss the complaint for lack of subject matter jurisdiction or, in the alternative, for summary judgment. Plaintiff filed opposition to the motion, and defendants

filed a reply. [Docket Nos. 26, 30, 31]. After considering the moving and opposing papers and the arguments made by counsel during the hearing on the motion, the Court granted defendants' motion in an order dated March 31, 2015. [See Docket Nos. 33, 36]. This memorandum of decision describes the basis for that ruling.

**Motion to Dismiss for Lack of Subject Matter Jurisdiction**

A complaint may be dismissed for lack of subject matter jurisdiction. Fed. R. Civ. P. 12(b)(1). "The party asserting jurisdiction bears the burden of establishing subject matter jurisdiction on a motion to dismiss for lack of subject matter jurisdiction." In re Dynamic Random Access Memory (DRAM) Antitrust Litig., 546 F.3d 981, 984 (9th Cir. 2008). "Subject matter jurisdiction must exist as of the time the action is commenced." Morongo Band of Mission Indians v. Cal. State Bd. of Equalization, 858 F.2d 1376, 1380 (9th Cir. 1988), cert. denied, 488 U.S. 1006 (1989).

Subject matter jurisdiction may be challenged in two ways. See Safe Air for Everyone v. Meyer, 373 F.3d 1035, 1039 (9th Cir. 2004). In a facial attack, the challenger asserts that the allegations contained in a complaint are insufficient on their face to invoke federal jurisdiction. Safe Air, 373 F.3d at 1039. In a factual attack, the challenger disputes the truth of the allegations that facially demonstrate the existence of federal jurisdiction. Safe Air, 373 F.3d at 1039. The essential difference between the two is that, unlike a facial attack, a factual attack "relie[s] on extrinsic evidence and [does] not assert lack of subject matter jurisdiction solely on the basis of the pleadings." Safe Air, 373 F.3d at 1039 (quoting Morrison v. Amway Corp., 323 F.3d 920, 924 n.5 (11th Cir.

2003)).

In evaluating a factual attack under Rule 12(b)(1), the court is not limited to reviewing the allegations in the pleadings, Trentacosta v. Frontier Pac. Aircraft Indus., Inc., 813 F.2d 1553, 1558 (9th Cir. 1987), and the allegations of the complaint are not presumed to be true. Augustine v. United States, 704 F.2d 1074, 1077 (9th Cir. 1983). The court may rely on affidavits or other extrinsic evidence properly before the court without converting the motion into one for summary judgment. See Warren v. Fox Family Worldwide, Inc., 328 F.3d 1136, 1139 (9th Cir. 2003); Ass'n of Am. Med. Coll. v. United States, 217 F.3d 770, 778 (9th Cir. 2000); St. Clair v. City of Chico, 880 F.2d 199, 201 (9th Cir.1989), cert. denied, 493 U.S. 993 (1989). The party opposing the motion must present affidavits or other evidence necessary to satisfy its burden of establishing that the court, in fact, possesses subject matter jurisdiction. Ass'n of Am. Med. Coll., 217 F.3d at 778; St. Clair, 880 F.2d at 201. The district court does not abuse its discretion by relying upon this extra-pleading material in deciding the issue, even if it becomes necessary to resolve factual disputes to determine whether subject matter jurisdiction exists. Ass'n of Am. Med. Coll., 217 F.3d at 778; St. Clair, 880 F.2d at 201.

When, however, a jurisdictional motion involves factual issues which also go to the merits, the trial court should employ the standard applicable to a motion for summary judgment. Trentacosta, 813 F.2d at 1558 (quoting Augustine, 704 F.2d at 1077); Capitol Indus.-EMI, Inc. v. Bennett, 681 F.2d 1107, 1118 (9th Cir. 1982) ("The principle underlying the rule is that the tenor of Rule 56 suggests that summary judgment thereunder deals with the merits of an action

and not with matters of abatement.").   "Under this standard, the moving party should prevail only if the material jurisdictional facts are not in dispute and the moving party is entitled to prevail as a matter of law."   Trentacosta, 813 F.2d at 1558 (internal citation and quotation marks omitted).

The parties agree that this motion is governed by Rule 12(b)(1) rather than by Rule 56. [Transcript of September 29, 2014 Hearing ("Transcript") 4, 28].   See Greene v. United States, 207 F. Supp. 2d 1113, 1118 (E.D. Cal. 2002)(concluding that since the "[d]iscretionary function exception to the FTCA involves the subject matter jurisdiction of the court," the "most appropriate procedural vehicle to drive the court's decision is Rule 12(b)(1) — especially in that the underlying facts related to assertion of the discretionary function exception are not essentially in dispute")(citing Reed v. U.S. Dep't of the Interior, 231 F.3d 501, 504 (9th Cir. 2000); Vickers v. United States, 228 F.3d 944, 949 (9th Cir. 2000)).

### Allegations of the complaint

During the summer of 2003, Wildlife Waystation ("WWS") founder and Director of Animal Care Martine Colette ("Colette") requested that defendants reinspect the WWS facility so that the suspension of her Animal Welfare Act ("AWA") exhibitor's license pursuant to a 2002 consent decision in a prior administrative action against WWS and Colette could be lifted. [Complaint 7]. Defendants conducted an inspection of WWS from August 19 through 21, 2003 (the "August 2003 inspection"). The August 2003 inspection was conducted by Kathleen Garland ("Garland"), Jeanne Lorang ("Lorang"), and two others. Garland and Lorang were employees of the Animal and Plant Health Inspection Service("APHIS"), a USDA agency. Garland was employed by

APHIS as a supervisory Veterinary Medical Officer ("VMO"), and Lorang was employed by APHIS as an Animal Care Inspector ("ACI"). [Complaint 4, 9-10]. Plaintiff alleges that Garland, Lorang, and another APHIS employee, Laurie Gage ("Gage"), a VMO, "were either investigative officers or law enforcement officers, or both, employed by USDA." [Complaint 9].   In the section of the complaint identifying the parties, the following USDA employees are also named as defendants: Lupe Aguilar ("Aguilar"), an investigator employed by the UDSA's Investigative and Enforcement Service; Colleen Carroll ("Carroll"), an attorney working for the USDA; and Robert M. Gibbens ("Gibbens"), Director, Western Region, of APHIS. [Complaint 4-5]. The complaint alleges no facts that specifically identify or involve Aguilar, Carroll, or Gibbens.[1]

After the August 2003 inspection was completed, plaintiff participated by phone in an exit interview. [Complaint 9]. WWS, Colette, and plaintiff assumed that the August 2003 inspection was in response to Colette's request for reinspection. They were unaware that defendants had filed a new administrative enforcement action against WWS and Colette on or about August 15, 2003 (the "2003 Action"), and that the August 2003 inspection was "in aid of [defendants']newly-filed, but undisclosed and unserved complaint" in the 2003 Action. [Complaint 6-10]. Defendants served the complaint in the 2003 Action on August 23, 2003.  Plaintiff was not named as a respondent in that complaint. [Complaint 10].

On or about September 16, 2003, plaintiff spoke to Garland and

---

[1]      The complaint alleges that some acts or omissions were undertaken by the "EMPLOYEES," which the complaint defines as "all **or** some" of the named defendants and never defines with more specificity. [Complaint 5 (emphasis added)].

Lorang by phone. [Complaint 10].   Shortly thereafter, plaintiff was named as a respondent in an amended complaint filed in the 2003 Action. [Complaint 11].  Plaintiff alleges that he was named as a respondent in the 2003 Action "without probable cause, with malice, and with the intent to harm [his] reputation and finances and to cause him grief and anguish by knowingly bringing false charges against him." [Complaint 12].   Plaintiff alleges that "the investigative law enforcement officers negligently failed to meet the applicable ordinary duty of care with regard to conducting an investigation of Plaintiff . . . [and] negligently failed to meet the applicable special duty of care with regard to conducting an investigation of Plaintiff by failing to follow the USDA guidelines for conducting investigations." [Complaint 12].  Plaintiff eventually was dismissed from the 2003 Action. [Complaint 13].

Plaintiff also alleges that defendants improperly named him as a respondent in another administrative action brought against WWS around August 2007 (the "2007 Action"). [Complaint 13].   Plaintiff alleges that naming him as a respondent in the 2007 Action was improper for the same reasons that naming him in the 2003 Action was improper. [Complaint 13-14].  Plaintiff was dismissed from the 2007 Action "on the eve of trial." [Complaint 15]. Plaintiff alleges that defendants caused him financial, professional, reputational, and emotional harm by naming him in the 2003 Action and 2007 Action (collectively, the "enforcement actions") and by prosecuting the enforcment actions against him until their dismissal. [Complaint 14-16].

### The parties' contentions

Defendants contend that the court lacks subject matter jurisdiction over plaintiff's complaint under the FTCA's discretionary

1  function exception and its intentional torts exception. [Defendants'
2  Motion to Dismiss or for Summary Judgment ("Defs' Mot.") 1-2].
3  Defendants argue that the FTCA's discretionary function exception
4  applies because the APHIS inspections and investigations which led to
5  plaintiff's being named a respondent in the enforcement actions were
6  within the discretion delegated to the USDA and APHIS under the AWA.
7  [Defs' Mot. 12].   Defendants contend that the intentional torts
8  exception applies because none of the USDA employees who allegedly
9  took part in the inspections or investigation of WWS described in the
10 complaint were empowered to execute searches, seize evidence, or make
11 arrests for violations of federal law, and therefore those defendants
12 are not "investigative or law enforcement officers" within the meaning
13 of the FTCA. [Defs' Mot. 8].

14      Plaintiff responds that the FTCA's discretionary function
15 exception does not apply because, in his view, the decision to name
16 him as a respondent in the administrative actions was made pursuant to
17 the requirements of the AWA, the discretionary function exception does
18 not apply to the commission of intentional torts, and "[d]efendants'
19 failure to investigate Plaintiff prior to bringing an action against
20 him vitiates any contention that defendants were acting in their
21 discretion." [Plaintiff's Opposition ("Pl's Opp.") 14, 11].   Plaintiff
22 also contends that the FTCA's intentional torts exception does not
23 apply because "Defendants are APHIS officials who are empowered to
24 perform a wide variety of searches and even seize and destroy
25 animals." [Pl's Opp. 18].

26         **Discretionary Function Exception, 28 U.S.C § 2680(a)**
27      The FTCA was enacted "primarily to remove the sovereign immunity
28 of the United States from suits in tort." <u>Levin v. United States</u>, —

U.S. —, 133 S. Ct. 1224, 1228 (2013) (quoting Richards v. United States, 369 U.S. 1, 6 (1962)). The FTCA gives federal district courts exclusive jurisdiction over claims against the United States for "injury or loss of property, or personal injury or death caused by the negligent or wrongful act or omission" of federal employees acting within the scope of their employment. 28 U.S.C. § 1346(b)(1).

The FTCA also contains enumerated exceptions that serve as limitations on the waiver of sovereign immunity. Levin, 133 S. Ct. at 1228. As part of the limited waiver of sovereign immunity, the discretionary function exception to the FTCA precludes the imposition of liability for conduct "based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the Government, whether or not the discretion involved be abused." 28 U.S.C. § 2680(a). The application of this exception involves a two-step inquiry. See United States v. Gaubert, 499 U.S. 315, 323-324 (1991); Berkovitz v. United States, 486 U.S. 531, 536 (1988).

First, the act or conduct at issue must be discretionary in nature, in that it "involves an element of judgment or choice." Berkovitz, 486 U.S. at 536 (citing Dalehite v. United States, 346 U.S. 15, 34 (1953)). The essential element of judgment or choice is absent "when a federal statute, regulation, or policy specifically prescribes a course of action for an employee to follow . . . [because] the employee has no rightful option but to adhere to the directive." Berkovitz, 486 U.S. at 536. "[I]f the employee's conduct cannot appropriately be the product of judgment or choice, then there is no discretion in the conduct for the discretionary function exception to protect." Berkovitz, 486 U.S. at 536.

Second, "assuming the challenged conduct involves an element of judgment, a court must determine whether that judgment is of the kind that the discretionary function exception was designed to shield." Berkovitz, 486 U.S. at 536. Congress designed the discretionary function exception to "prevent judicial 'second-guessing' of legislative and administrative decisions grounded in social, economic, and political policy through the medium of an action in tort." Berkovitz, 486 U.S. at 536-537 (quoting United States v. Variq Airlines, 467 U.S. 797, 814 (1984)). "The discretionary function exception insulates the Government from liability if the action challenged in the case involves the permissible exercise of policy judgment." Berkovitz, 486 U.S. at 537. It is the nature of the conduct, not the status of the actor, that governs the applicability of this exception. Variq Airlines, 467 U.S. at 813. "[I]f a regulation allows the employee discretion, the very existence of the regulation creates a strong presumption that a discretionary act authorized by the regulation involves consideration of the same policies which led to the promulgation of the regulations." Gaubert, 499 U.S. at 324.

The government bears the burden of proving the applicability of the discretionary function exception. Terbush v. United States, 516 F.3d 1125, 1128 (9th Cir. 2008); Dichter-Mad Family Partners, LLP v. United States, 707 F. Supp. 2d 1016, 1028 (C.D. Cal. 2010). The government can meet its initial burden in one of two ways. See Dichter-Mad, 707 F. Supp. 2d at 1029. First, "the government may show that a statute, regulation or policy confers discretion on the government actor; this gives rise to a 'strong presumption' that the alleged harmful act was guided by policy judgment." Dichter-Mad, 707 F. Supp. 2d at 1029 (citing Gaubert, 499 U.S. at 324). If the

applicable statute or regulation does not give the employee discretion, no presumption attaches that the alleged harmful act was guided by a policy judgment. Dichter-Mad, 707 F. Supp. 2d at 1027 (citing Gaubert, 499 U.S. at 323-325). Second, the government "may show that the actor's course of action was 'of the kind' that is 'susceptible to policy analysis.'" Dichter-Mad, 707 F. Supp. 2d at 1029 (quoting Gaubert, 499 U.S. at 322-325); see also GATX/Airlog Co. v. United States, 286 F.3d 1168, 1178 (9th Cir. 2002) ("[T]he question is not whether policy factors necessary for a finding of immunity were in fact taken into consideration, but merely whether such a decision is susceptible to policy analysis."). Either of these showings satisfies the government's burden of proving the applicability of the discretionary function exception. Dichter-Mad, 707 F. Supp. 2d at 1029 (citing Blackburn v. United States, 100 F.3d 1426, 1436 (9th Cir. 1996)). "[T]he question of *whether* the government was negligent is irrelevant to the applicability of the discretionary function exception, [and] the question of *how* the government is alleged to have been negligent is critical." Whisnant v. United States, 400 F.3d 1177, 1185 (9th Cir. 2005)(citation omitted).

Whether a challenged action falls within the discretionary function exception requires a particularized analysis of the specific agency action challenged. GATX/Airlog, 286 F.3d at 1174. Thus, before turning to Gaubert and Berkovitz's two-step inquiry, the court must first identify plaintiff's "specific allegations of agency wrongdoing." Berkovitz, 486 U.S. at 540. To identify the particular agency conduct that the plaintiff challenges, the court looks to the allegations of the plaintiff's complaint. See Whisnant, 400 F.3d at 1185.

Plaintiff alleges that he was named as a respondent in the 2003 Action after a telephone conversation with Lorang and Garland. [Complaint 10]. Plaintiff alleges that he became upset by the inspectors' "arbitrary actions," "demanded that [they] treat [WWS] fairly," and "was critical of the USDA investigators and inspectors." [Complaint 11]. "Within days of being telephonically criticized by Plaintiff, the investigating law enforcement officers and the Employees for the USDA caused the [2003 Action] to be amended by naming Plaintiff as a defendant to each and every claim made against WWS by the USDA without regard for Lorsch's personal participation in, or percipient knowledge of, the conduct giving rise to the claims asserted in the" 2003 Action. [Complaint 5, 11]. Plaintiff alleges that "the investigative law enforcement officers" (that is, Lorang, Garland, and Gage) "did not perform any additional inspections or obtain additional documents," and none of the investigative reports prepared up to that point attributed any facts or wrongdoing to plaintiff. [Complaint 11; see Pl's Opp. 4]. As a result, plaintiff alleges that Lorang, Garland, and Gage negligently investigated plaintiff and also negligently failed to follow the USDA guidelines for conducting investigations. [Complaint 12]. Plaintiff alleges that the same wrongful conduct that occurred in the 2003 Action (failure to investigate, prosecution without probable cause, etc.) caused him to be named as a respondent in the 2007 Action. [Complaint 14-15].

Defendants have met their burden to prove that the discretionary function exception applies. The government may submit evidence of a statute, regulation, or policy that confers discretion on the government actor. Dichter-Mad, 707 F. Supp. 2d at 1029. "The federal government regulates the treatment of animals through the [AWA], which

11

sets standards for the treatment of certain animals that are bred for sale, exhibited to the public, used in biomedical research, or transported commercially." Puppies 'N Love, v. City of Phoenix, — F. Supp. 2d —, 2015 WL 4532586, at *1 (D. Ariz. July 27, 2015) (citing U.S.C. §§ 2131-2159). Through the AWA, Congress has given authority to the Secretary of Agriculture ("Secretary") to perform certain animal welfare functions and to promulgate rules and regulations to effectuate the purposes of the AWA. See 7 U.S.C. §§ 2131 et seq.

The Secretary has delegated the responsibility for implementing the AWA to the Under Secretary for Marketing and Regulatory Programs, 7 C.F.R. § 2.22(a)(2)(vi), who has delegated these responsibilities to the Administrator of APHIS, 7 C.F.R. § 2.80(a)(6). [Defs' Mot., Exhibit ("Ex.") 1, Declaration of Bernadette Juarez ("Juarez Decl."), at 20]. The APHIS Administrator has delegated authority to: (1) the Deputy Administrator of Animal Care to establish acceptable standards of humane care and treatment for regulated animals and to monitor and achieve compliance through inspections, enforcement, education, and cooperative efforts under the AWA, 7 C.F.R. §§ 371.7, 371.11(b); and (2) the Deputy Administrator of Marketing and Regulatory Programs Business Services ("MRPBS") to direct and coordinate investigations related to APHIS program laws and regulations, to coordinate enforcement of program laws and regulations with the Office of the General Counsel, and to support and enforce APHIS program activities, 7 C.F.R. § 371.5(b)(7), (8) and 371.11(b). [Juarez Decl. 20-21]. Within APHIS and MRPBS, the Investigative and Enforcement Service ("IES") is responsible for enforcing, and investigating alleged violations of, the AWA insofar as it relates to animal issues under APHIS's jurisdiction. [Juarez Decl. 7].

The language of the AWA and the AWA regulations demonstrates that decisions pertaining to enforcing and investigating alleged violations of the AWA or the AWA regulations are discretionary in nature. Specifically, "[t]he Secretary shall make such investigations or inspections *as he deems necessary* to determine whether any dealer, exhibitor . . . has violated or is violating any provision of this chapter or any regulation or standard issued thereunder . . . ." 7 U.S.C. § 2146(a) (emphasis added).  The AWA regulations also require licensees under the AWA to allow APHIS officials to inspect their facilities and records, and to perform certain specific investigatory duties "*as the APHIS officials consider necessary* to enforce the provisions of the [AWA] . . . ." 9 C.F.R. § 2.126(a) (emphasis added). If the Secretary determines that a licensee is in violation of any of the AWA's provisions, the Secretary "*may* suspend . . . or revoke such license," "*may* . . . assess[] a civil penalty,"and "*may also* make an order that such person shall cease and desist from continuing such violation." 7 U.S.C. § 2149(a)-(b) (emphasis added).  Criminal penalties against licensees also *may* be brought by attorneys of USDA with the consent of the Attorney General. 7 U.S.C. § 2149(d) ("Prosecution of such violations shall . . . be brought initially before United States magistrate judges . . . and, with the consent of the Attorney General, *may* be conducted . . . by attorneys of the United States Department of Agriculture.") (emphasis added).

The enforcement provisions of the AWA are not mandatory rules that dictate the circumstances under which a licensee or the licensee's agent must or must not be prosecuted. Cf. Dichter-Mad, 707 F. Supp. 2d at 1035 (holding that the decision whether to investigate and bring enforcement proceedings by SEC employees was discretionary

because the relevant statute "repeatedly uses permissive language rather than mandatory language"). Rather, the decision by the Secretary or those authorized to act on the Secretary's behalf to bring civil or criminal charges, or to suspend or revoke a license, for violations of the AWA or the AWA regulations is a discretionary one. Thus, the first Berkovitz prong is met because the decision to prosecute plaintiff involved an "element of judgment or choice." See Berkovitz, 486 U.S. at 536.

The second Berkovitz prong is also met because the judgment involved in defendants' decision to file enforcement actions against plaintiff is of the kind that the discretionary function exception was designed to shield. Because the AWA regulations give APHIS employees discretion, "the very existence of the regulation[s] creates a **strong presumption** that a discretionary act authorized by the regulation[s] involves consideration of the same policies which led to the promulgation of the regulations." Dichter-Mad, 707 F. Supp. 2d at 1027 (emphasis in original). Congress's stated policy in enacting the AWA was to ensure that animals intended for use in research facilities or for exhibition purposes or for use as pets are provided humane care and treatment, to assure the humane treatment of animals during transport in commerce, and to protect the owners of animals from the theft of their animals by preventing the sale or use of animals that have been stolen. 7 U.S.C. § 2131. The second Berkovitz prong is satisfied because those statutory and regulatory provisions create a "strong presumption" that in inspecting and investigating WWS and in prosecuting the enforcement actions against plaintiff, the USDA employees identified in the complaint acted to promote the "same policies" that underlie the AWA and the AWA regulations. Dichter-Mad,

707 F. Supp. 2d at 1027.

Even if the court credits as true plaintiff's allegations that no meaningful investigation occurred, and that no policy considerations were actually weighed, the second Berkovitz prong is satisfied because the decision to prosecute the enforcement actions against plaintiff is a decision "of the kind" that is "susceptible to policy analysis." Dichter-Mad, 707 F. Supp. 2d at 1029. "The decision whether or not to prosecute an individual is a discretionary function for which the United States is immune from liability." Wright v. United States, 719 F.2d 1032, 1035 (9th Cir. 1983) (holding that the discretionary function exception shielded the decision to indict the plaintiff for failing to file tax returns), abrogated on other grounds by Gasho v. United States, 39 F.3d 1420 (9th Cir. 1994) (citing Smith v. United States, 375 F.2d 243 (5th Cir.), cert. denied, 389 U.S. 841 (1967)); see also General Dynamics Corp. v. United States, 139 F.3d 1280, 1282, 1286 (9th Cir. 1998) (stating that "prosecutorial discretion is covered" under the discretionary function exception, and holding that the discretionary function exception barred the plaintiff's FTCA negligence action against a federal agency whose negligently prepared report caused the plaintiff's errant prosecution for fraud) (citing Wright, 719 F.2d at 1025; Gray v. Bell, 712 F.2d 490, 513 (D.C. Cir. 1983) ("Prosecutorial decisions as to whether, when and against whom to initiate prosecution are quintessential examples of governmental discretion in enforcing the criminal law, and, accordingly, courts have uniformly found them to be immune under the discretionary function exception.")(footnote omitted)). Therefore, defendants have met their initial burden to prove the applicability of the discretionary function exception.

Since the government satisfied its initial burden, the burden shifts to plaintiff to present sufficient evidence to withstand dismissal for lack of jurisdiction. Blackburn, 100 F.3d at 1436. In line with the two-step inquiry articulated in Gaubert and Berkovitz, plaintiff may meet his burden by showing either "(1) that there are mandatory rules prescribing the actor's course of action, or (2) that the actor's course of action was not 'of the kind' that is 'susceptible to policy analysis.'" Dichter-Mad, 707 F. Supp. 2d at 1029 (quoting Gaubert, 499 U.S. at 322-325).

Plaintiff has not pointed to any mandatory rules prescribing the conduct of defendants' employees in this case.  Plaintiff contends, however, that defendants are "estoped from contending that they were exercising their discretion in bringing Plaintiff into the enforcement action since they previously have contended that bringing Plaintiff into the action was pursuant to the prescribed requirements of the AWA." [Pl's Opp. 14].

Plaintiff's estoppel argument is conclusory. He does not identify the "prescribed requirements" on which he contends defendants previously relied or the estoppel theory (such as judicial estoppel or collateral estoppel) on which his argument rests. Since plaintiff has not pointed to any factual or legal circumstances creating an estoppel, his estoppel argument is insufficient to meet his burden to overcome the strong presumption that the conduct of defendants' employees in filing and prosecuting the enforcement actions was discretionary rather than mandatory.

Plaintiff also contends that the discretionary function exception is inapplicable because defendants' employees "complete[ly] failed" to investigate him and therefore failed to "actually exercise" discretion

before prosecuting him, and because the administrative law judge found that the case against plaintiff was "entirely baseless and unjustified." [Pl's Opp. 12-14].   Plaintiff's evidence fails to support those assertions.

In the August 4, 2008 initial administrative decision dismissing the 2003 Action as to both plaintiff and Colette, the Administrative Law Judge ("ALJ") found, among other things, that: (1) the APHIS officials who inspected WWS in August 2003 and September 2003 "completed an extremely thorough investigation"; (2) plaintiff had offered "no evidence" that APHIS selectively enforced the AWA against him in violation of his constitutional rights, and "the very nature of enforcement of remedial statutes by government agencies requires an agency to frequently choose who to enforce against in order to best effectuate the statute's remedial purposes"; and (3) although APHIS did not "literally follow each step" of the inspection protocols in its "inspection guides" during the August 2003 and September 2003 investigations, no prejudice resulted because the "guides do not indicate that each of their procedures was mandatory—they were intended for use as 'guides.'" [Declaration of Robert Lorsch in Opposition to Motion to Dismiss ("Lorsch Decl."), Ex. A at 48-51].

The government appealed that decision.  The ALJ who presided over the administrative appeal characterized the first ALJ's decision as "thorough and well-reasoned," agreed with "most, but not all" of the first ALJ's findings, and declined to consider any issues not raised by the government on appeal, including the first ALJ's findings concerning the methodology and quality of APHIS's investigation and the absence of evidence of selective enforcement. [See Lorsch Decl., Ex. B at 75-76].  The second ALJ found that plaintiff "served at

various times as 'best friend' and advocate" for WWS and that there was "no dispute" that plaintiff "actively participated in certain aspects of" WWS's operations by performing a variety of activities on its behalf, including contributing financially to WWS, acting as its representative, advocate and agent in dealings with federal, state and local governments, and participating in fund-raising efforts. [Lorsch Decl., Ex. B at 71, 78, 90-91]. The second ALJ concluded, however, that those activities did not violate the AWA or demonstrate that plaintiff "operated" WWS so as expose him to liability as an "exhibitor" under the AWA. [Lorsch Decl., Ex. B at 79]. The second ALJ also concluded that the actions of WWS could not be imputed to plaintiff as a matter of law, and that plaintiff's conduct during the September 2003 exit interview, while "clearly impolite," did not rise to the level of "abuse" of APHIS officials in violation of the AWA regulations. [Lorsch Decl., Ex. B at 78-81, 95]. Accordingly, on appeal, the second ALJ dismissed the 2003 Action as to plaintiff. [Lorsch Decl., Ex. B at 95-96].

Nothing in the administrative decisions attached to plaintiff's declaration establishes or plausibly suggests that the decision to prosecute the enforcement actions against plaintiff was "entirely baseless and unjustified," as plaintiff contends. Nor does the record support plaintiff's contention that there was a "complete failure" to investigate him such that the decision to prosecute him involved no discretion and was arbitrary. Even if defendants' employees were negligent in some respect in the manner in which they investigated plaintiff, mere negligence in performing a discretionary function does not preclude application of the discretionary function exception. See General Dynamics Corp., 139 F.3d at 1282, 1286 (holding that the

discretionary function exception barred the plaintiff's FTCA action against a federal agency who negligently prepared an audit report presented to prosecutors because the prosecutors were not prevented "from gathering further information before they proceeded," "were not required to prosecute," and "were not forced to do so," so the plaintiff's "harm actually flow[ed] from" the prosecutors' exercise of discretion); <u>Sabow v. United States</u>, 93 F.3d 1445, 1452-1453 (9th Cir. 1996) (affirming the dismissal of FTCA claims arising out of government investigators' allegedly negligent failure to follow agency investigative procedures under the discretionary function exception where agency manuals contained "suggestive guidelines" rather than "mandatory directives" for conducting investigations); <u>see generally Gasho</u>, 39 F.3d at 1435 ("That the conduct of the [government] agents may be tortious or motivated by something other than law enforcement is beside the point, as governmental immunity is preserved 'whether or not the discretion involved be abused.'") (quoting <u>Johnson v. United States</u>, 949 F.2d 332, 340 (10th Cir. 1991)).

For all of the reasons described above, the discretionary function exception bars this action.

### Intentional Torts Exception, 28 U.S.C. § 2860(h)

The intentional torts exception provides that the FTCA's waiver of sovereign immunity shall not apply to any claim "arising out of" certain intentional torts. <u>See</u> 28 U.S.C. § 2680(h). However, the intentional torts exception contains a "proviso" stating that the waiver of sovereign immunity "shall apply" to any claim "arising out of" malicious prosecution, abuse of process, and certain other intentional torts committed by an "investigative or law enforcement officers of the United States Government[.]" 28 U.S.C. § 2680(h);

Millbrook v. United States, — U.S.—, 133 S. Ct. 1441, 1444 (2013) ("The FTCA waives the United States' sovereign immunity for certain intentional torts committed by law enforcement officers."); Tekle v. United States, 511 F.3d 839, 851 (9th Cir. 2007) ("The FTCA provides an exception to the United States' liability for certain torts, including assault, battery, and false arrest. When such a tort is committed by a federal law enforcement officer, however, liability is restored.) (citing 28 U.S.C. § 2680(h)).

For purposes of this "law enforcement proviso," Millbrook, 133 S. Ct. at 1443, the term "investigative or law enforcement officer" means "any officer of the United States who is empowered by law to execute searches, to seize evidence, or to make arrests for violations of Federal law." 28 U.S.C. § 2680(h). The waiver of sovereign immunity effected by section 2680(h) "extends to acts or omissions of [investigative or] law enforcement officers that arise within the scope of their employment, regardless of whether the officers are engaged in investigative or law enforcement activity, or are executing a search, seizing evidence, or making an arrest." Millbrook, 133 S. Ct. at 1446.[2]

The court is permitted to review allegations of the complaint and evidence regarding the job duties and job descriptions of the federal employees in question to determine if they are "investigative or law enforcement officer[s]" under section 2680(h). See, e.g., Arnsberg v. United States, 757 F.2d 971, 978 n.5 (9th Cir. 1985) (noting that United States magistrate judges are empowered by statute to make

---

[2]   It is undisputed that the acts or omissions of defendants as alleged in the complaint occurred during the course of their employment.

arrests and therefore could be considered "'investigative or law enforcement officers' for purposes of section 2680(h) when actually apprehending a suspect")(citing 18 U.S.C. § 3041); Gonzales v. United States, 2013 WL 942363, at *5 (C.D. Cal. Mar. 11, 2013) (reviewing the job description of Immigration and Customs Enforcement ("ICE") Detention Officers on the ICE website to determine whether they qualified as "law enforcement officers" under section 2680(h), but granting the defendant's motion to dismiss on the alternative ground that the complaint alleged no facts suggesting that any detention officer or other "law enforcement officer" committed an intentional tort); Sims v. United States, 2008 WL 4813827, at *5 (E.D. Cal. Oct. 29, 2008) (holding that "immigration officers" are "investigative or law enforcement officers" under section 2680(h) because they are empowered by statute "to make arrests, execute warrants and make warrantless searches," but that attorneys working for ICE are not given those powers and therefore "are not such officers" under section 2680(h)).

In support of their motion, defendants presented the Juarez Declaration and the declaration of Charlene Buckner ("Buckner Decl.") and attached to those declarations written job descriptions for the positions held by Lorang, Gage, Garland, Gibbens, Aguilar, and Carroll. Plaintiff objects that those job descriptions lack foundation because the job requirements of APHIS's VMOs and ACIs are dictated by federal regulations rather than by the agency's job postings, and because the job descriptions are vague as to the time period to which they apply. [Plaintiff's Request for Evidentiary Ruling re Juarez Decl. ("Pl's Obj. re Juarez Decl.") 18; Plaintiff's Request for Evidentiary Ruling re Buckner Decl. ("Pl's Obj. re Buckner Decl.") at

8].  Plaintiff also objects to the declarations of Juarez and Buckner in their entirety on the grounds that they are not based on personal knowledge and consist merely of inadmissible hearsay. [Pl's Obj. re Juarez Decl. 6-7; Pl's Obj. re Buckner Decl. 5-6].

Defendants respond that plaintiff's objections lack merit.  They argue that Juarez has personal knowledge of the APHIS activities at issue because she "advised upon and for a time, helped to administer" those activities. Defendants also argue that Buckner's declaration "simply authenticates attorney Carroll's job description." [Defendants' Reply to Plaintiff's Opposition to Defendants' Motion to Dismiss ("Defs' Reply") at 1 n.1].

The Juarez and Buckner declarations are based on personal knowledge.  "Personal knowledge can be inferred from a declarant's position within a company or business." Edwards v. Toys "R" Us, 527 F. Supp. 2d 1197, 1201 (C.D. Cal. 2007) (citing In re Kaypro, 218 F.3d 1070, 1075 (9th Cir. 2000); Barthelemy v. Air Lines Pilots Ass'n, 897 F.2d 999, 1018 (9th Cir. 1990)).  Juarez has been employed with the USDA for over eleven years, during which she represented the Administrator of APHIS in administrative enforcement actions under the AWA and supervised APHIS personnel who were conducting inspections and investigations authorized under the AWA. [Juarez Decl. 2].  That is sufficient to show Juarez's personal knowledge of the facts presented in her declaration.

Although Buckner does not directly supervise attorneys, including Carroll, she is the Director of Administration and Resource Management of the USDA's Office of General Counsel ("OGC").  In that capacity, Buckner is responsible for coordinating paperwork for personnel actions within the OGC. [Buckner Decl. 2].  The Court can reasonably

infer that Buckner's position within the OGC gives her personal knowledge of what each position within the OGC would entail. For these reasons, plaintiff's objections are overruled, and his request to strike the Juarez and Buckner declarations and the attached job descriptions is denied.

The complaint alleges that Lorang, Garland, and Gage were investigative or law enforcement officers and acted within the scope of their employment during their inspections of WWS. The complaint further alleges that the AWA and the AWA regulations permitted "badged employees of the USDA" who were conducting inspections to, among other things, enter all areas where regulated animals are housed, all other animal areas, and the offices of the licensee; to examine and copy the licensee's records; to take pictures of the facility, property, or animals; and to interview personnel or interested persons. [Complaint 4-5, 9]. The complaint also alleges that "[t]he inspectors and investigators went through the entire [WWS] facility. The searches were warrantless. The investigators and inspectors frequently took pictures and regularly took with them copies of the WWS records. All of the inspections were intrusive and long-lasting." [Complaint 10]. In his opposition to defendants' motion to dismiss, plaintiff contends that Lorang, Garland, and Gage are "APHIS officials who are empowered to perform a wide variety of searches and even seize and destroy animals," and that APHIS officials "ha[ve] a great deal of authority to conduct unannounced and non-consensual searches (for days at a time, as here) and can even seize animals as part of the search." [Pl's Opp. 18-19].

Defendants contend that Lorang, Garland, and Gage are not investigative or law enforcement officers because they have no

23

authority to execute searches or seize evidence, but rather are only authorized to "conduct initial and ongoing licensing and subsequent compliance inspections or investigations on behalf of APHIS, to report their findings to their supervisors, and/or to assist or participate in administrative enforcement proceedings as warranted by the findings of the inspections or investigations." [Defs' Reply 2].

Lorang, Garland, and Gage are the only employees alleged to be investigative or law enforcement officers under section 2680. [Complaint 9].   Therefore, their duties and authority as APHIS officials (Lorang as an ACI, and Garland and Gage as VMOs) are the only ones relevant to determining whether or not the "law enforcement proviso" applies.

The AWA regulations state that each exhibitor under the AWA "shall furnish to any APHIS official any information concerning the business of the . . . exhibitor . . . which the APHIS official may request in connection with the enforcement of the provisions of the [AWA], the regulations and the standards in this subchapter" within a "reasonable time and as may be specified in the request for information." 9 C.F.R. § 2.125.   Additionally, each exhibitor "shall, during business hours, allow APHIS officials":

(1) To enter its place of business;

(2) To examine records required to be kept by the [AWA] and the regulations in this part;

(3) To make copies of the records;

(4) To inspect and photograph the facilities, property and animals, as the APHIS officials consider necessary to enforce the provisions of the [AWA], the regulations and the standards in this subchapter; and

(5) To document, by the taking of photographs and other means, conditions and areas of noncompliance.

9 C.F.R. § 2.126(a). The AWA regulations do not, however, delegate to "APHIS officials" authority to search for animals that are reported missing. Instead, exhibitors "shall allow . . . *police or officers of other law enforcement agencies with general law enforcement authority* . . . to enter his or her place of business" for the purpose of seeking animals that have been reported missing. 9 C.F.R. § 2.128 (emphasis added). Similarly, the AWA regulations authorize an APHIS official to confiscate an animal only if, among other things, the APHIS official "contacts *a local police or other law officer* to accompany him to the premises . . . ." 9 C.F.R. § 2.129(b)(emphasis added). It may reasonably be inferred from the text of these regulations that APHIS officials themselves are not "police or officers of other law enforcement agencies with general law enforcement authority," nor are they "local police or other law officer[s]." See Employers Ins. of Wausau v. United States, 815 F. Supp. 255, 256-257 (N.D. Ill. 1993) (holding that a statutory provision that permitted the Environmental Protection Agency ("EPA") to "require" the United States Attorney General to "secure relief" to abate certain imminent hazards "tended to confirm" that EPA officials did not have such law enforcement power on their own).

The written job descriptions for VMOs and ACIs provide additional details about their job duties and authority, and nothing in those job descriptions supports the conclusion that they are investigative or law enforcement officers within the meaning of section 2680(h). As VMOs working in APHIS's Animal Care Program, Gage's and Garland's job descriptions include industry and inspector education, evaluation of

regulations and policies, inspection of problematic facilities, liaison with industry and with other regulatory agencies at both the regional and national levels, and consultation on enforcement actions related to this area of expertise. [Juarez Decl. Attachment 3; Defs' Mot. 34].

As an ACI working in APHIS's Animal Care Program, Lorang has authority that includes formally documenting compliance and noncompliance with the AWA and monitoring corrective action. [Juarez Decl. Attachment 4; Defs' Mot. 40]. ACI inspections include observing animals for signs of poor health, abuse, or inadequate care; examining the adequacy of the facility in a number of respects, including size, design, construction, and sanitation; gathering information on the animals' diets and inspecting food preparation facilities; examining facility records; and assessing the adequacy of veterinary care. [Juarez Decl. Attachment 4; Defs' Mot. 40-41].

When they have reason to believe a licensee is potentially in violation of the AWA, Animal Care Program employees, including VMOs and ACIs, may submit a request for investigation to IES, which may conduct its own investigation and make an enforcement recommendation. [Juarez Decl. 9-10]. Lorang, Garland, and Gage are not employees of the IES division, but rather of the Animal Care Program.

Nothing in the record suggests that VMOs and ACIs are investigative or law enforcement officers under section 2680(h). They do not have the authority to seize evidence or to make arrests for violations of Federal law. Moreover, they are not authorized to execute "searches." The only evidence to the contrary plaintiff identifies is the definition of "search inspections" in the Exhibitor Inspection Guide, which defines the word "search" as an "investigation

to determine if a regulated activity is being conducted by an unlicensed person." [Pl's Opp. 20]. However, as defendants point out, the Exhibitor Inspection Guide also states that it "does not supersede the Animal Welfare Act, the Animal Welfare Act Regulations and Standards, Animal Care policies, standard procedures, or the inspector's professional judgment." [Defs' Reply 2]. Further, an administrative investigation that requires a governmental agency to make fact-finding determinations in the discharge of its statutory duties does not warrant the applicability of § 2680(h). See Wausau, 815 F. Supp. at 257 ("Surely the mere need for an agency to learn the facts necessary to exercise the statutory responsibilities with which that agency is charged cannot serve as a litmus test for labeling its personnel 'investigative officers' . . . ."); see also EEOC v. First Nat'l Bank of Jackson, 614 F.2d 1004, 1007-1008 (5th Cir. 1980) (holding that agents of the Equal Employment Opportunity Commission were not law enforcement or investigative officers, even though they were statutorily empowered to "at all reasonable times have access to, for the purpose of examination, and the right to copy any evidence of any person being investigated or proceeded against that relates to unlawful employment practices . . . ."). Accordingly, the AWA, AWA regulations, and the job descriptions indicate that VMOs and ACIs in APHIS's Animal Care Program are not investigative or law enforcement officers.

No court has decided whether VMOs or ACIs in APHIS's Animal Care Program can be considered investigative or law enforcement officers within the meaning of section 2680(h). However, case law cited by the parties involving APHIS inspections in the context of a Fourth Amendment search support the conclusion that APHIS officials are not

"investigative or law enforcement officers."  The Seventh Circuit has held that a warrantless APHIS inspection pursuant to the AWA does not violate the Fourth Amendment because it fits within the exception to the warrant requirement for inspections of "closely regulated" industries. Lesser v. Espy, 34 F.3d 1301, 1306 (7th Cir. 1994).

Even if Lorang, Garland, or Gage could be considered an investigative or law enforcement officer within the meaning of section 2680(h), the law enforcement proviso would not confer subject matter jurisdiction over this action because application of the discretionary function exception "trumps" application of the intentional torts exception.  The Ninth Circuit has concluded that claims covered by the law enforcement proviso are barred if they are based on the performance of discretionary functions within the meaning of section 2680(a). See Gasho, 39 F.3d at 1435-1436 (holding that the intentional tort remedy provided by the FTCA's law enforcement proviso did not apply to conduct that the government had shown was exempt from liability under the "Customs exception" in section 2680(c) or the discretionary function exception in section 2680(h)) (citing Wright v. United States, 719 F.2d 1032, 1035-1036 (9th Cir. 1983) (holding that the law enforcement proviso in section 2680(h) applied because the government failed to demonstrate that the conduct at issue was not excepted from liability under section 2680(c), which would have barred the claim); Gray v. Bell, 712 F.2d 490, 507-508 (D.C. Cir. 1983)(holding that the plaintiff could not pursue an intentional tort claim under the law enforcement proviso in section 2680(h) for tortious conduct that was protected by the "discretionary function" exception in section 2680(a)), cert. denied, 465 U.S. 1100 (1984)). Since an intentional tort committed by an "investigative or law

enforcement" officer cannot be the basis for an FTCA claim against the United States if the officer's conduct involved a discretionary function, section 2680(a) exempts defendants from liability for malicious prosecution or abuse of process even if Lorang, Garland, or Gage were investigative or law enforcement officers.

Because plaintiff's IIED and NIED claims "arise out of" the same facts as his malicious prosecution and abuse of process claims, those claims are also barred. See 28 U.S.C. § 2680(h). "In determining whether a claim arises out of one of the enumerated torts" in section 2680(h), courts "look beyond a plaintiff's classification of the cause of action to examine whether the conduct upon which the claim is based constitutes one of the torts listed in § 2680(h). [Courts] focus [their] § 2680(h) inquiry on whether conduct that constitutes an enumerated tort is 'essential' to a plaintiff's claim." Sabow, 93 F.3d at 1456(citing Mt. Homes, Inc. v. United States, 912 F.2d 352, 356 (9th Cir. 1990); Thomas–Lazear v. Fed. Bureau of Investigation, 851 F.2d 1202, 1207 (9th Cir. 1988)).

In this case, all of plaintiff's alleged harm stems from the decisions to commence and prosecute the enforcement actions against him until their termination. [See Complaint 14-16, 18-15; Transcript 13-14]. Therefore, plaintiff's IIED claims and NIED claims are barred for the same reasons as his malicious prosecution and abuse of process claims. See Mt. Homes, 912 F.2d at 356 (holding that the plaintiff alleged conduct that falls within the excepted tort of misrepresentation because "the essential element of Mt. Homes' claim is that [the government] gave it inaccurate information"); Snow-Erlin v. United States, 470 F.3d 804, 808 (9th Cir. 2006) ("If the gravamen of Plaintiff's complaint is a claim for an excluded tort under §

29

2680(h), then the claim is barred.").

## Conclusion

For the reasons described above, the Court lacks subject matter jurisdiction over this action.

The remaining issue is whether to allow plaintiff leave to amend. Plaintiff contends that he should be allowed to amend his complaint so that he may undertake discovery "to define more clearly the scope of" APHIS employees' authority to search, seize, and arrest within the meaning of section 2680(h). [Pl's Opp. 9].  Plaintiff argues that allowing him to amend in this manner is appropriate because there is authority for the proposition that section "2680(h) trumps [section] 2680(a).  In other words, if you have an [investigative or law enforcement officer] conduct an intentional tort[], the discretionary function [exception] does not protect him." [Transcript 23-24].

///

///

///

For the reasons described above, under Ninth Circuit law, the law enforcement proviso in section 2680(h) does not "trump" application of the discretionary function exception in section 2680(a).   Instead, application of the discretionary function exception means that the law enforcement proviso does not confer subject matter jurisdiction over plaintiff's claims, irrespective of whether the APHIS employees in this case are investigative or law enforcement officers. Therefore, allowing plaintiff to amend his complaint would be futile. See Reddy v. Litton Indus., Inc., 912 F.2d 291, 296 (9th Cir. 1990) ("It is not an abuse of discretion to deny leave to amend when any proposed amendment would be futile."); see also Abaqninin v. AMVAC Chem. Corp., 545 F.3d 733, 742 (9th Cir. 2008) ("Leave to amend may be denied if a court determines that 'allegation of other facts consistent with the challenged pleading could not possibly cure the deficiency.'")(quoting Schreiber Distrib. Co. v. Serv-Well Furniture Co., 806 F.2d 1393, 1401 (9th Cir. 1986)).

October 29, 2015

_____
Andrew J. Wistrich
United States Magistrate Judge